■ In the Matter of FRANKLIN B. RESSEGUIE, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. The petition in this attorney disciplinary proceeding charges respondent with several acts of professional misconduct including, *inter alia,* conflict of interest, failure to maintain an escrow account, neglect and deception. Following a hearing, the Referee sustained most of the charges, although portions of charges accusing respondent of dishonesty, fraud, deceit or misrepresentation were rejected. Both petitioner Committee on Professional Standards and respondent now move to confirm in part and disaffirm in part the Referee's report.

Respondent, an attorney admitted to practice by this court in 1954, maintains an office for the practice of law in the City of Binghamton.

Charge I of the Committee's petition of charges and specifications accuses respondent of entering into a business transaction with a client in violation of the Code of Professional Responsibility DR 5-104 (A)[1] and DR 1-102 (A) (4), (5) and (6).[2] In brief, respondent accepted the offer of a client, Raymond B. Norton, near the end of 1978 to purchase an existing mortgage of approximately $49,000 on respondent's home to help respondent stave off possible foreclosure proceedings. At the time, respondent and Norton enjoyed a wide-ranging and active attorney-client relationship although no written retainer agreement was ever entered into. After the assignment of the mortgage to Norton, which assignment was not recorded by respondent until December 1985, over a year after Norton's death, respondent followed a very flexible schedule in making payments to Norton on the debt secured by the mortgage. There was no writing memorializing the terms of

---

1. DR 5-104 (A) states: "A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

2. DR 1-102 states:

"(A) A lawyer shall not * * *

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"(5) Engage in conduct that is prejudicial to the administration of justice.

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

the payment schedule or of Norton's rights to demand or enforce payment, and respondent's actual payments did not follow any specified schedule as to amount, due dates, allocation of principal or interest, or applicable interest rate; respondent also took substantial credits against the debt for legal fees earned in representing Norton as plaintiff in an involved breach of trust and conspiracy action and for other out-of-pocket expenses incurred by respondent on Norton's behalf. Norton was not represented by independent counsel in either the assignment of the mortgage or the establishment of the terms of the debt payments. Under these circumstances, we confirm the Referee's findings as to this charge and conclude that respondent violated DR 5-104 (A) and DR 1-102 (A) (5), (6). Respondent clearly placed himself in a situation wherein the exercise of his professional judgment on behalf of his client could be affected by his own financial interests. He determined the extent of the ongoing legal services provided on Norton's behalf, the fees for which would then be deducted from the mortgage debt. In addition, we find that respondent did not fully inform Norton of their differing interests and that Norton did not knowingly consent to this arrangement. We also confirm the Referee's finding that respondent did not engage in dishonest, fraudulent, or deceitful conduct or misrepresentation in this transaction in violation of DR 1-102 (A) (4).

Charge II accuses respondent of violating the Code of Professional Responsibility DR 9-102 (A) and (B) (3) in that, from 1975 through at least June 23, 1986, he failed to maintain an identifiable bank account for the deposit of clients' funds, failed to maintain adequate records of such funds and failed to render appropriate accounts to clients regarding their funds. In view of respondent's admission that he failed to maintain a bank account for clients' funds and after reviewing the exhibits of client records and accounts in evidence, we confirm the Referee's conclusion that respondent violated DR 9-102 (A) and (B) (3).

Charge III alleges that respondent violated DR 5-101 (A)[3] by continuing to represent the estate of Raymond B. Norton in Broome County Surrogate's Court in connection with the breach of trust and conspiracy action originally commenced by

3. DR 5-101 (A) states: "Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his financial, business, property, or personal interests."

respondent on Norton's behalf and referred to in charge I. By decision dated December 20, 1985, the Surrogate relieved respondent of his representation of the estate after finding that he was indebted to the estate in the amount of nearly $30,000 (the outstanding mortgage debt involved in charge I), and that legal fees charged by respondent in connection with the action would be credited by him as payments on the debt. The Referee found, and we agree, that the representation of the estate under these circumstances was violative of DR 5-101 (A). We also agree with the Referee's conclusions that respondent did not make full disclosure of the circumstances surrounding his representation to the executors of the estate and that they did not knowingly consent to this arrangement.

Charge IV accuses respondent of failing to comply with section 806.18 of this court's rules (Rules of App Div, 3d Dept [22 NYCRR]) which, like DR 9-102 (A) and (B) (3), requires an attorney to maintain an escrow account for client funds and accurate records thereof. For the reasons stated with respect to charge II *(supra)*, we confirm the Referee's finding sustaining this charge.

Charge V accuses respondent of violating DR 6-101 (A) (3) by neglecting a legal matter entrusted to him by Norton. Specifically, the charge alleges that, during the period from April 1978 through February 1980, respondent made payments on a contract to one Dorothy Lake on behalf of Norton pursuant to the terms of a separation agreement between Norton and his ex-wife. It appears that although the separation agreement specified regular monthly payments, respondent made payments at irregular times and in varying amounts, neglected to credit said payments appropriately to principal and interest, and failed to obtain satisfactory receipts and maintain adequate records with respect to same. The Referee sustained this charge finding that although respondent was following Norton's wishes in making irregular payments to Lake, this did not absolve him of his duty to act professionally by carrying out the terms of the separation agreement to the best of his ability rather than follow the wishes of his client which were contrary to the terms of the agreement. We agree and confirm the Referee's finding sustaining this charge.

Charge VI accuses respondent of violating DR 5-103 (B)[4] by

4. DR 5-103 (B) states: "While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that a lawyer may advance or

making a personal loan of $550 to Norton while representing him in the breach of trust and conspiracy action referred to in charge I. Respondent admits making the loan to Norton for living expenses after Norton was unable to obtain the moneys elsewhere. Based upon this admission, the Referee sustained this charge and we confirm that finding.

Charges VII, VIII and IX of the petition stem from a loan respondent accepted from a client, one Donald R. Leonard. In July 1980, respondent settled a personal injury lawsuit on behalf of Leonard for $12,500. Respondent charged, and was paid, a fee of $4,162.50 for this representation. He also borrowed $7,000 of the settlement amount from Leonard "for investment at 12% per annum". No other terms of the loan were memorialized nor was Leonard represented by independent counsel with respect to the loan. Thereafter, respondent, apparently with Leonard's acquiescence, made irregular payments on the loan at irregular intervals, usually in cash, with no attempt to allocate payments between principal and interest.

Charge VII accuses respondent of violating DR 1-102 (A) (3), (4) and (6)[5] and DR 5-101 (A) by involving himself in this loan transaction with Leonard under such circumstances. The Referee concluded that respondent violated DR 1-102 (A) (6) (engaging in "conduct that adversely reflects on his fitness to practice law") but that the loan from Leonard did not violate the other provisions charged. We agree and confirm the Referee's finding. At the time the funds were obtained from Leonard, respondent did not make clear to his client that the "investment" of $7,000 was unsecured, that the money would be used by respondent personally as a loan and that respondent was then in financial difficulty. The payments on the loan were made in an irregular and casual manner. At one point respondent credited himself with a payment of $500 for legal services rendered to Leonard's daughter. On two other occasions, respondent added $500 to his debt as "bonuses" to Leonard for "use of your $7,000". The addition of these amounts to the loan was reflected in a handwritten note from respondent to Leonard. These unprofessional dealings with a

guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."

5. DR 1-102 (A) (3) states:

"A lawyer shall not * * *

"(3) Engage in illegal conduct involving moral turpitude."

client clearly amount to conduct adversely reflecting on respondent's fitness to practice law. However, because there is no evidence that Leonard did not agree to the method of repayment or that respondent had any intent to defraud Leonard, the Referee correctly found respondent not guilty of violating DR 1-102 (A) (3) and (4). Also, because respondent did not undertake any further legal representation of Leonard after accepting the loan, DR 5-101 (A) is inapplicable to respondent's conduct.

Charge VIII accuses respondent of violating DR 1-102 (A) (4) and (6) by attempting to mislead and deceive the heirs of Leonard by allegedly falsely stating in a 1986 agreement, which at least three of the heirs signed, that the exact amount still due on the loan was not known. The Referee did not sustain this charge and we confirm his finding. First, because of his poor record keeping, it is unlikely respondent knew the precise amount owed when he drafted the agreement. Second, it seems fairly clear that the agreement was designed more to fix the distribution of respondent's future payments on the loan rather than determine the exact amount due. Third, respondent shortly thereafter wrote a letter to one of the heirs proposing a sum due which was close to the original $7,000 loaned.

Charge IX accuses respondent of violating DR 5-101 (A) by preparing a petition for letters of administration in the estate of Donald R. Leonard. The petition, which was never presented to Surrogate's Court, lists respondent as attorney for the estate and lists assets of approximately $7,800 of which approximately $7,000 consisted of money owed by respondent to the estate as a result of the loan which forms the basis of charge VII. Respondent did advise two of the heirs that if a dispute arose concerning the amount owed, he would have "to retire" as attorney for the estate. We confirm the Referee's finding sustaining this charge. Respondent did not have the consent of his client made after full disclosure that his professional judgment would likely be affected by his own financial interests as a person owing money to the estate.

The charges sustained against respondent demonstrate that over a period of several years he engaged in business transactions with clients which were obviously advantageous to him but which demonstrate a disregard for, and insensitivity to, the various canons of ethics forbidding such dealings which of necessity would involve respondent in readily apparent conflicts of interest. Indeed, respondent's misconduct continued even after the deaths of both Norton and Leonard when he

attempted to represent the estates of these clients under circumstances which were clearly improper. Respondent's poor record keeping and casual treatment of his loan obligations compound his misconduct and lack of professionalism in these matters.

In addition, the evidence establishes that for over 10 years respondent failed to maintain an escrow account for client funds and appurtenant records, as required by both the Code of Professional Responsibility (DR 9-102 [A], [B] [3]) and the rules of this court (22 NYCRR 806.18), neglected a legal matter, and made an improper personal loan to a client.

In mitigation, respondent cites the extensive financial reversals he suffered in the mid-1970's which, in part, prompted the improper loans; his intention to satisfy his debts to the heirs of Norton and Leonard, the former being secured by a mortgage and the latter reaffirmed before this court at the oral argument of this proceeding; his efforts, including the filing of a petition in bankruptcy, to put his personal finances and law office affairs in proper order; and his past involvement in a wide range of voluntary community activities.

In determining the measure of discipline to be imposed, we have taken into consideration the mitigating circumstances set forth by this 66-year-old respondent and have also considered the fact that he is currently attempting to rebuild his practice and to put behind him the financial difficulties which apparently prompted the ill-advised loan transactions with clients underlying the majority of the charges against him. In addition, we take note that the charges of dishonesty and fraud in regard to these matters have not been sustained.

On the other hand, the misconduct established against respondent is substantial and was of long duration. We also observe that respondent was the subject of an admonition issued by petitioner in 1982.

In order to deter similar misconduct and preserve the reputation of the Bar, we conclude that respondent should be suspended from the practice of law for a period of six months.

Respondent suspended from the practice of law for six months, the date of commencement to be fixed in the order to be entered hereon. Mahoney, P. J., Kane, Casey, Levine and Harvey, JJ., concur.