(September 26, 1990)

■ In the Matter of JAMES C. STEENBERGH, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Petitioner, the Committee on Professional Standards, has charged respondent with conversion of client funds. Respondent admitted the facts set forth in the five specifications of the charge but denied the commission of professional misconduct in his answer. The court has granted petitioner's motion for an order declaring that no factual issues were raised by the pleadings (22 NYCRR 806.5); respondent was thereafter heard in mitigation.

Respondent maintains an office for the practice of law in Athens, Greene County. He was admitted to the practice of law by this court in 1953.

In August 1978, prior to relocating to California, Dr. F. A. Duncan Alexander, an elderly client of respondent's, executed a general power of attorney authorizing respondent to handle banking and other transactions on his behalf. In or about October 1979, a real estate closing was conducted by respondent with respect to a farm owned by Dr. Alexander. Respondent deposited the net proceeds of $32,489.72 in a bank account in Greene County in Dr. Alexander's name. The final disposition of these funds is the crux of the charge against respondent.

In May 1983, Dr. Alexander died. According to respondent, Dr. and Mrs. Lewis, with whom Dr. Alexander had been residing in California, advised respondent that Dr. Alexander

had been in a nursing home for awhile, apparently left no unpaid debts or bills or a will, and that there would be no estate proceedings. By the time of Dr. Alexander's death, respondent had made several reinvestments of the principal and interest of the farm sale proceeds and had deposited the funds in three bank accounts in the name of Dr. Alexander or respondent.

After Dr. Alexander's death, in September 1983, respondent transferred the deposits to five accounts in respondent's name in trust for one of Dr. Alexander's two daughters (he also had one son). Respondent did not advise the daughter of the existence of these accounts. Also, in August and September 1983, respondent took $3,000 from one of the accounts that had been in Dr. Alexander's name and put the funds to his own personal use.

In March 1984, respondent became aware of and wrote to Dr. Lewis about a relatively small savings account of Dr. Alexander at the Ravena Branch of the Catskill Savings Bank. Then, in 1985, he noticed an advertisement that the funds in the account had escheated to the State of New York. Respondent indicates he thereafter stopped renewing the trust accounts and transferred them into his own name. Respondent did not notify Dr. Alexander's heirs of the fact that he was holding the proceeds of the sale of the farm nor did he institute an estate or any other proceeding to establish owner-ship of said funds.

In the spring of 1988, Dr. Lewis informed respondent that Dr. Alexander was a mortgagee in connection with some properties which had since been paid off and that the mortga-gors needed releases. Respondent suggested the appointment of an administrator for the estate and such an administrator was eventually appointed in California. Thereafter, respon-dent exchanged some informational letters with the estate's attorney.

Respondent subsequently received a letter of inquiry from petitioner concerning his handling of Dr. Alexander's affairs. That letter of inquiry and petitioner's investigation led to the filing of the instant charge of professional misconduct in April 1990.

In July 1990, respondent entered into a settlement with Dr. Alexander's estate, filed in the Superior Court of California, County of Alameda. In return for the estate's covenant not to sue him, respondent paid the estate $84,236.73.

In view of respondent's admissions, we find him guilty of the

charge of conversion as alleged in the petition, in violation of Code of Professional Responsibility DR 1-102 (A) (4), (5) and (6) and DR 9-102 (A) and (B). Respondent argues that Dr. Alexander intended to make a gift to him of $20,000 of the farm sale proceeds and supports this contention by citing some references in letters between respondent and Dr. Alexander, the latter's apparent estrangement from his own children and his wife's relatives, and the relationship, both personal and professional, that had developed between respondent and Dr. Alexander. However, regardless of the merits of respondent's argument, it is apparent that he had no claim to all of the farm sale proceeds; yet, all of the funds were ultimately deposited in bank accounts bearing only respondent's name and there is no indication he attempted to establish ownership of the funds. Moreover, respondent admits withdrawing $3,000 from an account bearing his and Dr. Alexander's name for his own personal use.

Respondent's actions with regard to his client's funds obviously constitute very serious professional misconduct. We note, in mitigation, that respondent appears to have made satisfactory restitution to the estate, has cooperated with petitioner's investigation of this matter, and enjoys an otherwise unblemished disciplinary record. In addition, he has had a distinguished legal career in Greene County, including several terms as the elected District Attorney for that county.

Nevertheless, by his professional misconduct, respondent betrayed the trust placed in him by his client and also failed to maintain the high standards expected of a member of the legal profession when dealing with funds belonging to another. Accordingly, we conclude that respondent should be suspended from the practice of law for a period of two years.

Respondent suspended from the practice of law for a period of two years and until further order of this court, the date of commencement to be fixed in the order to be entered hereon. Kane, J. P., Weiss, Levine, Mercure and Harvey, JJ., concur.