THIRD DEPARTMENT, APRIL, 1991

(April 3, 1991)

■ In the Matter of BRUCE H. HARDY, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner.—Per Curiam. Respondent, who was admitted to practice by this court in 1979, maintains an office for the practice of law in Corning, Steuben County. The alleged misconduct at issue in this proceeding occurred, however, while respondent was practicing law in Elmira, Chemung County.

Petitioner, the Committee on Professional Standards, by petition of charges and specifications dated May 22, 1990, accuses respondent of neglect, conversion of client funds, and improperly accepting loans from clients. Respondent's answer largely admits the facts set forth in the various specifications of the petition but denies professional misconduct with respect to some charges and sets forth mitigating circumstances with respect to most of the charges. A hearing, held on November 29, 1990, was narrowly focused on the disputed allegations of specifications one and two of charge III, concerning respondent's dealings with his client, Merle Sinko. Because the Hearing Officer, Hon. Frederick B. Bryant, died shortly after the conclusion of the hearing without having rendered a report, the parties agreed to permit this court to determine the matter in the first instance based upon the hearing record.

The charges and specifications, as outlined below, largely describe a pattern of misconduct from approximately 1984 through 1990, during which time respondent allegedly converted client funds entrusted to him, converted client fees which should have been turned over to the law firms by which he was employed, and improperly accepted loans from clients. According to respondent, he made use of the moneys to ward off possible financial disaster caused by the expansion of a large mushroom-growing facility owned by him and his wife. The expansion also added to the stress he was under caused by his father-in-law's lingering and fatal illness, his heavy law

firm workload, and a temporary reduction in salary caused in part by the time he was devoting to the mushroom business.

Charge I, in a single specification, accuses respondent of neglect in violation of the Code of Professional Responsibility, DR 6-101 (A (3). According to the specification, respondent's clients, the Weads, gave him a $10,000 check in the fall of 1988 made payable to respondent for the express purpose of satisfying a debt due the Farmer's Mortgage Home Administration (FMHA), which had instituted a foreclosure proceeding against the Weads. Respondent failed to timely remit the funds to the FMHA and did not satisfy the debt on behalf of his clients until February 1990.

Charge II, in two specifications, accuses respondent of failing to deposit funds belonging to his clients in an identifiable bank account and of converting said funds, in violation of the Code of Professional Responsibility, DR 1-102 (A) (4), (5) and (6)* and DR 9-102 (A), (B) (1) and (3). Specification one cites respondent's conversion of the $10,000 entrusted to him by the Weads. Specification two cites his conversion, in February 1989, of $10,000 entrusted to him by the purchasers of a liquor license from an estate represented by respondent.

Respondent admits charges I and II and the specifications thereunder but claims that he has mitigated the misconduct by making restitution of the converted moneys from pension funds payable to him when he left the law firm of Sayles and Evans in Elmira in February 1990. In addition, the Weads have submitted a favorable letter to petitioner on respondent's behalf. In view of respondent's admissions, we find him guilty of professional misconduct as specified in charges I and II of the petition.

Charge III, in six specifications, accuses respondent of converting and diverting fees due the Davidson and O'Mara firm in Elmira, where he was employed from about 1982 to 1987, and deceiving the firm with respect to such fees, all in violation of the Code of Professional Responsibility, DR 1-102 (A) (4) and (6). Specifications one and two cite sporadic payments to respondent by his client, Merle Sinko, amounting to some $5,000. Although respondent has consistently maintained that Sinko's payments to him were loans, we find, based upon Sinko's testimony and the circumstances of the payments testified to by both Sinko and respondent, that the

---

* DR 1-012 (A) (6), forbidding conduct that adversely reflects on a lawyer's fitness to practice law, was renumbered, effective September 1, 1990, as DR 1-102 (A) (7).

payments were actually legal fees, as alleged by petitioner. With respect to specification three, respondent admits he intended to exchange his legal services for equipment from his client, the Independent Forklift Company, and thereby intended to divert and convert funds belonging to the Davidson and O'Mara law firm. With respect to specifications four and five, respondent admits converting a $1,200 fee due the law firm from his client, George Featherman. With respect to specification six, respondent admits exchanging legal fees due his firm from his client, R.L. Callahan, Inc., for use of equipment to assist him in the construction of the mushroom facility. In view of respondent's admissions and our finding with respect to specifications one and two concerning Sinko, we conclude that respondent is guilty of professional misconduct as specified in charge III of the petition. In mitigation, respondent notes that he never actually accepted the equipment from the forklift company and that he has made restitution to his law firm of Featherman's $1,200 fee and of an amount on account in the Callahan matter.

Charge IV, in five specifications, accuses respondent of borrowing funds from clients without taking appropriate steps to protect his clients' interests in violation of the Code of Professional Responsibility, DR 1-102 (A) (4), (5) and (6), DR 5-101 (A) and DR 5-104. The five specifications cite a $1,500 loan from Sinko, a $2,500 loan from John Cadwallader, $5,000 in loans from Jean Davidson, $13,000 in loans from John Potter, and $6,000 in loans from Francis Cleary. The $1,500 loan from Sinko is also part of the $5,000 in legal fees from Sinko which petitioner accuses respondent of converting in charge III. Sinko testified that respondent told him that he would be granted a $1,500 offset against his legal fees on account of the loan. However, no such offset appeared on the books of the law firm. Respondent admits the facts of the specifications of charge IV but argues that the loans did not violate the Code of Professional Responsibility.

While attorneys are not prohibited from entering into commercial transactions with clients (see, Greene v Greene, 56 NY2d 86, 92), we conclude that, insofar as the specifications of charge IV describe loans that were not memorialized or only sketchily memorialized with terms favorable to respondent and were not disclosed to non-interested third parties, and describe respondent's failure to advise his clients of the benefits of independent advice, respondent engaged in conduct adversely reflecting on this fitness to practice law in violation of the Code of Professional Responsibility, DR 1-102 (A) (6).

However, insofar as respondent's clients were local business-men aware of respondent's intended use of the loans and the risks involved, as claimed by respondent without substantial contradiction by petitioner, we conclude that respondent is not guilty, as charged, of violating the Code of Professional Responsibility, DR 1-102 (A) (4) and (5), DR 5-101 (A), and DR 5-104. To prove a violation of these provisions, petitioner would have had to demonstrate that respondent somehow deceived or failed to disclose relevant information to the clients from whom he accepted loans (see, e.g., Matter of Resseguie, 138 AD2d 887, 890-891; Matter of Sherbunt, 134 AD2d 723, 724-725). In mitigation of charge IV, respondent cites his repayment of more than half of the loans and his intention to pay off all the loans, in part by performing legal services for some of the creditors.

Charge V accuses respondent of neglecting his duties as conservator of the property of Nellie Wetmore in violation of the Code of Professional Responsibility, DR 6-101 (A) (3). The single specification, admitted to by respondent, recites that he received a check as conservator for $2,348.58 derived from the sale of real property and that he retained the check in his conservatorship file for over six years without depositing it into the conservator's account or taking sufficient steps to finalize the matter. In view of respondent's admissions, we find him guilty of neglect as specified in charge V.

In summary, we find respondent guilty of serious professional misconduct involving conversion of client funds, neglect of matters entrusted to him, accepting loans from clients under circumstances adversely reflecting on his fitness to practice law, and deceiving his clients and colleagues. On the other hand, it must be noted that respondent has made serious efforts at restitution of the converted moneys and has repaid a substantial portion of the loans. Indeed, of the converted sums, only the $5,000 from Sinko remains unpaid and, even though we conclude otherwise, respondent considers those moneys a loan rather than converted legal fees. The financial and personal stresses under which respondent was functioning when he converted client funds and accepted loans from clients in an improper fashion also mitigate, but do not excuse, his misconduct. Finally, we note that respondent has an otherwise clean disciplinary record and has cooperated with petitioner in its investigation.

Nevertheless, because of the seriousness with which we view any conversion of client funds, and in order to deter similar misconduct, protect the public, and preserve the reputation of

the Bar, we conclude that respondent should be suspended from the practice of law for a period of two years *(see, e.g., Matter of Steenbergh,* 165 AD2d 953).

Respondent suspended from the practice of law for a period of two years and until further order of this court, the date of commencement to be fixed in the order to be entered hereon. Mahoney, P. J., Casey, Yesawich, Jr., Mercure and Harvey, JJ., concur.