■ In the Matter of WAYNE M. CHARIFF, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, THIRD JUDICIAL DEPARTMENT, Petitioner. [633 NYS2d 618] —Per Curiam. Respondent was admitted to practice by this Court in 1977 and currently practices law in Binghamton.

By petition dated May 27, 1994, the Committee on Professional Standards accused respondent of converting client funds (charge I), commingling personal funds with clients' funds (charge II), issuing checks which were returned for insufficient funds (charge III), borrowing funds from a client without taking appropriate steps to protect the client's interest (charge IV), failing to comply with a rule of this Court (charge V), attempting to mislead and deceive petitioner (charge VI), directing another to engage in fraudulent conduct (charge VII), and failing to cooperate with petitioner (charge VIII). All of the charges alleged violation of the Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]); charges I through IV and charge VIII also alleged violation of DR 1-102 (A) (8) (22 NYCRR 1200.3 [a] [8]); charges I through III and charges VI and VII also alleged violation of DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]). Violations of DR 9-102 (22 NYCRR 1200.46) were alleged by charges I through III. Charge IV also alleged violation of DR 5-101 (A) (22 NYCRR 1200.20 [a]) and DR 5-104 (A) (22 NYCRR 1200.23 [a]). Respondent has largely admitted the charges and specifications.

After a hearing which was mostly devoted to a statement in mitigation by respondent, the Referee issued a report sustaining all the specifications of the petition and all of the charges, except insofar as any charge alleged violation of DR 1-102 (A) (8) and except insofar as charges I and III alleged violation of DR 9-102. He also stated that he had found no evidence of venality in respondent's misconduct or any indication that anyone had suffered economic loss or other injury by reason of respondent's misconduct.

Petitioner moves to confirm the Referee's report in all respects except insofar as the Referee did not sustain the alleged violations of DR 9-102 set forth in charges I and III; in that respect petitioner moves to disaffirm the report. Petitioner

does not move to disaffirm those portions of the report failing to find that respondent's conduct violated DR 1-102 (A) (8). Respondent cross-moves to confirm the report except insofar as it concludes that respondent violated DR 1-102 (A) (4) as alleged in charges I through III and VI.

We conclude that respondent is guilty of seriously mishandling his escrow account while he was a solo practitioner in Binghamton from about the beginning of 1986 until the end of 1990. That mishandling resulted in escrow account deficiencies during seven periods of time in violation of DR 1-102 (A) (5), (8) and DR 9-102 (see, e.g., Matter of Schreibman, 211 AD2d 836). One of the account deficiencies was caused by respondent's investment of a client's money in a pre-existing loan made by respondent's father-in-law; another account deficiency was caused by respondent's repayment of a loan from a client from the escrow account. On these occasions, respondent also converted client funds in violation of DR 1-102 (A) (4) (see, e.g., Matter of Rosenberg, 192 AD2d 871; Matter of Harp, 173 AD2d 957). Respondent engaged in prohibited commingling by depositing his personal funds into the escrow account on at least five occasions, in violation of DR 1-102 (A) (5), (8) and DR 9-102 (A) (see, e.g., Matter of Galang, 208 AD2d 293; cf., Matter of Schreibman, supra). However, on another occasion, his deposit of personal funds into the escrow account was not prohibited commingling because he was correcting an account deficiency and respondent relinquished any claim to the deposited funds (see, e.g., Matter of Barnes, 198 AD2d 665). On four occasions, respondent issued checks on the escrow account which were returned for insufficient funds, in violation of DR 1-102 (A) (5), (8) and DR 9-102 (see, e.g., Matter of Bartholomew, 195 AD2d 753). Nevertheless, because of the general lack of venal motive underlying respondent's misconduct we conclude that respondent's commingling and bad checks did not violate DR 1-102 (A) (4) (see, e.g., Matter of Bartholomew, supra; see generally, Matter of Cohn, 194 AD2d 987).

Respondent obtained a $10,000 personal loan in 1988 from a client, James R. Kolba, Jr., under circumstances adversely reflecting on his fitness to practice law, a violation of DR 1-102 (A) (8). He did not provide Mr. Kolba with any documentation confirming the loan and did not furnish any collateral for the loan. Mr. Kolba was not represented by independent counsel and respondent did not advise him to consult independent counsel before agreeing to the loan. However, because it appears that respondent and Mr. Kolba and/or his father were local businessmen who were aware of respondent's intended

use of the loan and the risks involved, and that petitioner has not shown that respondent somehow deceived or failed to disclose relevant information to them, we conclude that, under the circumstances presented, respondent did not violate DR 1-102 (A) (5), DR 5-101 (A), and DR 5-104 (A) (*see, e.g., Matter of Hardy*, 172 AD2d 866).

In representing James R. Kolba, Sr., in litigation, respondent engaged in conduct violating DR 1-102 (A) (4) and (5). In May 1989, respondent signed his client's name to the verification of a bill of particulars and then had his secretary notarize the signature. He did not inform his secretary that he had signed the document rather than Mr. Kolba. It appears that his client had telephonically authorized the procedure, which respondent found expedient. (*See, e.g., Matter of Fiss*, 211 AD2d 32; *Matter of Intemann*, 165 AD2d 974; *Matter of Insogna*, 113 AD2d 988.)

In his dealings with petitioner while it was investigating the instant charges of professional misconduct, respondent engaged in professional misconduct in violation of DR 1-102 (A) (4), (5), and (8). He failed to timely respond to an inquiry letter from petitioner concerning a complaint from James R. Kolba, Jr., or to a follow-up letter. As a result of his failure to timely and fully respond, petitioner obtained a subpoena from this Court requiring respondent to produce documents and appear for an examination under oath. While respondent appeared at the examination, he did not produce the documents until after petitioner had made several more requests for them. Indeed, respondent did not produce the documents until the return date of a motion by petitioner to suspend respondent for failing to comply with the subpoena. Moreover, respondent complied with his duty to reimburse petitioner for the stenographic costs of his examination under oath only after petitioner had made repeated requests for payment during which times he misrepresented to petitioner that he had mailed the payment. Respondent also did not reply to the instant petition of charges until after petitioner had brought on a default judgment motion. (*See, e.g., Matter of Walters*, 204 AD2d 799.)

In general mitigation of his misconduct, respondent emphasizes the Referee's conclusion that he found no evidence of venality in the misconduct and that there has been no showing of actual client harm. Respondent reports that he has begun psychotherapy to help him deal with his neglectful behavior. It also appears that, if respondent can continue his present employment in a law firm environment rather than in solo practice, he is unlikely to repeat his misconduct. Respondent

has submitted many character testimonials, including one from a former Justice of the Supreme Court and others from highly respected attorneys. They describe respondent as a good family man, an excellent attorney, a very skilled trial lawyer, indicate he has a very good reputation among his peers and in his community, and note his very active and fruitful participation in the New York State Trial Lawyers Association. Respondent advised all who wrote on his behalf of the charges against him. Respondent enjoys an unblemished disciplinary record.

In view of the above, and to preserve the reputation of the Bar and to deter similar misconduct, we conclude that respondent should be suspended from practice for a period of six months (*see, e.g., Matter of Bartholomew, supra; Matter of Harp, supra*).

Mikoll, J. P., Crew III, Yesawich Jr., Peters and Spain, JJ., concur. Ordered that respondent be and hereby is found guilty of the professional misconduct charged and specified in the petition, except insofar as it charged respondent with violating DR 1-102 (A) (4) by specifications 1, 3, 4, 7, 8, and 9 of charge I and by charges II and III; except insofar as specification 3 of charge II accuses respondent of commingling; and except insofar as charge IV accuses respondent of violating DR 1-102 (A) (5), DR 5-101 (A) and DR 5-104 (A); and it is further ordered that the motions by petitioner and respondent to confirm and disaffirm the Referee's report be and hereby are granted and denied in accordance with the above finding of guilt; and it is further ordered that respondent be and hereby is suspended for a period of six months, effective thirty (30) days from the date of this order; and it is further ordered that for the period of suspension respondent be and hereby is commanded to desist and refrain from the practice of law in any form either as principal or as agent, clerk or employee of another; and he hereby is forbidden to appear as an attorney or counsellor-at-law before any court, Judge, Justice, board, commission or other public authority or to give to another any opinion as to the law or its application, or any advice in relation thereto; and it is further ordered that respondent shall comply with the provisions of section 806.9 (22 NYCRR 806.9) of the Rules of this Court regulating the conduct of disbarred, suspended or resigned attorneys.