09-90006-am

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

(Decided: November 22, 2011)

Docket No. 09-90006-am

_____

In re Fengling Liu,

        Attorney.

_____

For Fengling Liu:        Fengling Liu, Esq., New York, New York.

Before:  Cabranes, Sack, and Wesley, Circuit Judges.

**PER CURIAM:**

This Court's Committee on Attorney Admissions and Grievances ("the Committee") has recommended that Fengling Liu, an attorney admitted to the bar of this Court, be publicly reprimanded. We adopt the Committee's report, except as discussed below, and PUBLICLY REPRIMAND Liu for her misconduct in this Court.

**I. Summary of Proceedings**

By orders filed in February and July 2009, this Court referred Liu to the Committee for investigation of the matters described in those orders and preparation of a report on whether she should be subject to disciplinary or other corrective

measures. The relevant portions of those orders are appended to this decision.

During the Committee's proceedings, Liu had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in June 2009. Presiding over the hearing were Committee members David Fein, Paul Curnin, and the Honorable Howard A. Levine. In June 2010, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Liu with a copy of the Committee's report, and Liu responded.

In its report, the Committee concluded that there was clear and convincing evidence that Liu had engaged in "conduct unbecoming a member of the bar" warranting the imposition of discipline. Report at 12 (quoting Fed. R. App. P. 46(c)). Specifically, the Committee found, *inter alia*, that Liu had: (1) through negligence or gross negligence, defaulted on a number of cases in this Court, causing their dismissal; (2) failed to keep her clients apprised of the status of their cases; (3) failed to properly terminate her representation in a number of cases; (4) failed to exhaust administrative remedies for claims later presented to this Court; (5) failed to properly supervise less experienced associates, resulting in their filing of briefs in this Court that presented unexhausted claims without any explanation for why this Court should reach the merits despite the

2

failure to exhaust; (6) improperly filed petitions for review in this Court despite knowing that it was an incorrect venue, and negligently relied on a court employee's advice that the petitions could be so filed; and (7) violated her duty of candor by helping *pro se* petitioners draft and file petitions for review in this Court without disclosing her involvement to the Court (the "ghostwriting" charge). *Id.* at 2 n.1, 4-7, 9-11. After considering various aggravating and mitigating factors, *id.* at 12, the Committee recommended that Liu be publicly reprimanded and subject to certain reporting requirements, *id.* at 12-13.

In her response to the Committee's Report, Liu stated, *inter alia*, that: (1) she has reduced her caseload significantly; (2) the filing of petitions for review in the wrong venue had not been done with wrongful intent, occurred only after a court clerk had informed her that the petitions could be filed in this Court, and ceased as soon as she learned that it was improper; (3) she agrees that she had neglected to properly withdraw from representation, but asserts that her failure to do so had been the result of inexperience and not receiving timely guidance from the Court; (4) she disagrees with the Committee's finding that her clients had been prejudiced when their cases were defaulted; and (5) she agrees that she had failed to properly supervise the associates who drafted several deficient briefs. Liu Aff. at 2-6. Liu also acknowledged that she had helped clients draft petitions for review that were then filed *pro se* in this Court without her

3

involvement being disclosed; however, Liu explained that she did so primarily to ensure that her clients did not miss the thirty-day filing deadline. *Id.* at 3. Finally, Liu noted several mitigating factors, stated that she will "make sure any case [she] take[s] in the future will be handled diligently and competently," and requested that she be reprimanded privately, rather than publicly. *Id.* at 1-2, 5-6.

**II. Ghostwriting of *Pro Se* Pleadings**

We adopt all of the Committee's findings except those pertaining to Liu's undisclosed ghostwriting of petitions for review. For the following reasons, we conclude that her ghostwriting did not constitute sanctionable misconduct.

Although there have been a number of recent cases in this Court in which a *pro se* party's pleadings were drafted, or appeared to have been drafted, by an attorney, this Court has not yet addressed the issue of attorney ghostwriting.[1] However, a number of other federal courts have found that attorneys who had ghostwritten briefs or other pleadings for ostensibly *pro se* litigants had engaged in misconduct. In *Duran v. Carris*, for example, the Tenth Circuit admonished an attorney for ghostwriting

---

[1] The cases generally fall into three categories: (a) cases in which the attorney's drafting of a pleading is not disclosed at all; (b) cases in which the litigant informs the Court that an attorney drafted a pleading, but does not disclose the attorney's name; and (c) cases in which the drafting attorney's name is disclosed, without that attorney entering an appearance or signing the pleading.

a *pro se* brief for his former client without acknowledging his participation by signing the brief.  238 F.3d 1268, 1271-73 (10th Cir. 2001) (per curiam).  The court stated that the attorney's conduct had inappropriately afforded the former client the benefit of the liberal construction rule for *pro se* pleadings, had shielded the attorney from accountability for his actions, and conflicted with the requirement of Federal Rule of Civil Procedure 11(a) that all pleadings, motions, and papers be signed by the party's attorney.  *See id.* at 1271-72; *see also, e.g.*, *Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971) (disapproving of members of bar "represent[ing] petitioners, informally or otherwise, and prepar[ing] briefs for them which the assisting lawyers do not sign, and thus escape the obligation imposed on members of the bar ... of representing to the court that there is good ground to support the assertions made"); Ira P. Robbins, Ghostwriting: Filling in the Gaps of *Pro se* Prisoners' Access to the Courts, 23 Geo. J. Legal Ethics 271, 285 and n.73 (2010) ("The federal courts have almost universally condemned ghostwriting." (collecting cases)).[2]

---

[2] The ghostwriting issue has been more extensively discussed by the district courts, where the issue often involved more extensive drafting or representation than occurred in the present case.  *See, e.g.*, *Delso v. Trs. for Ret. Plan For Hourly Emps. of Merck & Co.*, Civ. Action 04-3009, 2007 WL 766349 at *12-18 (D. N.J. Mar. 6, 2007) (cross-motion for summary judgment); *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 885-87 (D. Kan. 1997) (opposition to motion to dismiss); *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1077 (E.D. Va.

On the other hand, a number of bar association ethics committees have been more accepting of ghostwriting.  The ethics committee opinions described in the following paragraphs are representative of the range of views on the subject and suggest a possible trend toward greater acceptance of various forms of ghostwriting.

A 1987 opinion of the New York City Bar's Committee on Professional and Judicial Ethics requires an attorney who drafts "any pleadings" for a *pro se* litigant, other than a "previously prepared form devised particularly for use by *pro se* litigants," to disclose that role to adverse counsel and the court, although the pleading need only note that it had been prepared by counsel without identifying the attorney.  *See* Ass'n of the Bar of the City of New York, Comm. on Prof'l & Judicial Ethics, Op. 1987-2 (1987).  A somewhat different conclusion was reached in a 1990 ethics opinion of the New York State Bar Association ("NYSBA") Committee on Professional Ethics, which permits attorneys to advise, and prepare pleadings for, *pro se* litigants, but only if: the attorney's name is disclosed to the court and opposing parties, the scope and consequences of the limited representation

1997) (civil complaints); *Johnson v. Bd. of Cnty. Comm'rs*, 868 F. Supp. 1226, 1231-32 (D. Colo. 1994) (motions and answer), *aff'd in part and disapproved in part on other grounds*, 85 F.3d 489, 492 n.3 (10th Cir. 1996); *Klein v. Spear, Leeds & Kellogg*, 309 F. Supp. 341, 342-43 (S.D.N.Y. 1970)("voluminous" papers responding to summary judgment motions).

are disclosed to the client, and the attorney adequately investigates the pleadings and prepares them in good faith. *See* NYSBA Comm. on Prof'l Ethics, Op. 613 (1990). The NYSBA opinion disagreed with the New York City Bar's 1987 opinion to the extent that the latter opinion did not require disclosure of the attorney's name. *See id.*

In contrast to the authorities described above, a more recent opinion of the ABA's Standing Committee on Ethics and Professional Responsibility concluded that "[a] lawyer may provide legal assistance to litigants appearing before tribunals '*pro se*' and help them prepare written submissions without disclosing or ensuring the disclosure of the nature or extent of such assistance." ABA Standing Comm. on Ethics & Prof'l Resp., Formal Op. 07-446, Undisclosed Legal Assistance to *Pro Se* Litigants (2007)(superseding ABA Comm. on Ethics & Prof'l Resp., Inf. Op. 1414). The ABA committee found that providing undisclosed legal assistance to *pro se* litigants constituted a form of limited representation, pursuant to ABA Model Rule of Professional Conduct 1.2(c), which states that "[a] lawyer may limit the scope of the representation [of a client] if the limitation is reasonable under the circumstances and the client gives informed consent." *Id.* at 1.

Regarding the benefit of liberal construction afforded to *pro se* pleadings, the ABA opinion stated that, "if the undisclosed

7

lawyer has provided effective assistance, the fact that a lawyer was involved will be evident to the tribunal" and, in any event, when a pleading is of higher quality, there will be no reason to apply liberal construction. *Id.* at 3. On the other hand, according to the ABA opinion, "[i]f the assistance has been ineffective, the *pro se* litigant will not have secured an unfair advantage." *Id.* The opinion concluded that, "[b]ecause there is no reasonable concern that a litigant appearing *pro se* will receive an unfair benefit from a tribunal as a result of behind-the-scenes legal assistance, the nature or extent of such assistance is immaterial and need not be disclosed." *Id.*

Regarding the attorney's potential dishonesty in avoiding accountability for his representation, the ABA opinion explained that "[w]hether it is dishonest for the lawyer to provide undisclosed assistance to a *pro se* litigant turns on whether the court would be misled by failure to disclose such assistance." *Id.* However, the opinion concluded that there is no such dishonesty as long as the client does not make an affirmative representation, attributable to the attorney, that the pleadings were prepared without an attorney's assistance. *Id.* at 4.

Similarly, in 2010, the Committee on Professional Ethics for the New York County Lawyers' Association ("NYCLA") concluded that "it is now ethically permissible for an attorney, with the informed consent of his or her client, to play a limited role and prepare pleadings and other submissions for a pro se litigant

8

without disclosing the lawyer's participation to the tribunal and adverse counsel." NYCLA Comm. on Prof'l Ethics, Op. 742 at 1 (2010). The NYCLA committee stated that "[d]isclosure of the fact that a pleading or submission was prepared by counsel need only be made" when required by a rule, order, or statute, or when nondisclosure would constitute a misrepresentation. *Id.* In those instances, "unless required by the particular rule, order or circumstance mandating disclosure, the attorney need not reveal his or her identity and may instead indicate on the ghostwritten document that it was 'Prepared with the assistance of counsel admitted in New York.'" *Id.* In reaching these conclusions, the NYCLA committee found, *inter alia*, that ghostwritten pleadings would not be unfairly accorded liberal construction, *id.* at 4-5, or hamper the courts' ability to sanction frivolous behavior by the parties or counsel, *id.* at 5.[3]

In light of the ABA's 2007 ethics opinion, and the other recent ethics opinions permitting various forms of ghostwriting,

---

[3] For present purposes, we do not exhaustively survey the many court and ethics committee opinions addressing the ghostwriting issue. However, we note that, in contrast to the federal court precedents, a majority of state courts and state ethics committees are reportedly more open to undisclosed ghostwriting, although that majority might be described as slim. *See* Ira P. Robbins, <u>Ghostwriting: Filling in the Gaps of *Pro Se* Prisoners' Access to the Courts</u>, 23 Geo. J. Legal Ethics 271, 286-88 (2010) (stating that, of twenty-four states that have addressed the issue, thirteen permit ghostwriting and, of those thirteen states, ten permit undisclosed ghostwriting while three require the pleading to indicate that it was prepared with the assistance of counsel; ten states expressly forbid ghostwriting).

it is possible that the courts and bars that previously disapproved of attorney ghostwriting of *pro se* filings will modify their opinion of that practice. *See* Robbins, *supra*, at 290 ("Almost all of the federal cases and state ethics opinions opposing ghostwriting were issued before the May 2007 ABA opinion. Because most states look to the ABA *Model Rules* when adopting and amending their own rules of professional conduct, the coming years may see a number of courts and states take a more relaxed stance on ghostwriting.") (internal footnote omitted); NYCLA Comm. on Prof'l Ethics, Op. 742 at 3 (noting "trend in favor of ghostwriting").

In the present case, the Committee concluded that Liu's undisclosed ghostwriting violated her duty of candor to the Court, contrary to the provision of the New York Lawyer's Code of Professional Responsibility barring her from "[e]ngag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." N.Y. Lawyer's Code of Prof'l Resp. D.R. 1-102(A)(4) (effective through March 31, 2009); *accord* N.Y. Rules of Prof'l Conduct R. 8.4 (effective April 1, 2009). However, a determination that Liu violated D.R. 1-102(A)(4) would require, at the very least, a finding that she knew, or should have known, of either (a) an existing obligation to disclose her drafting of pleadings, or (b) even in the absence of such a general obligation, the possibility that nondisclosure in a particular case would mislead the court in some material fashion. *See, e.g.,*

*In re Tavon*, 66 A.D.3d 224, 230-31 (2d Dep't 2009)(finding violation of D.R. 1-102(A)(4) where attorney held himself out as licensed at a time when "he knew or should have known" that his license had been suspended); *In re Gruen*, 55 A.D.3d 88, 90 (2d Dep't 2008)(same, where attorney filed retainer and closing statements containing information that "he knew, or should have known," was incorrect); *In re Stein*, 189 A.D.2d 128, 130 (1st Dep't 1993) (same, where attorney drafted checks "which he knew or should have known" would be dishonored).[4]

In light of this Court's lack of any rule or precedent governing attorney ghostwriting, and the various authorities that

[4] The cases cited in the text finding violations of D.R. 1-102(A)(4) where the attorneys "knew or should have known" that they were making misrepresentations may conflict with other New York cases that require a finding of venal intent. *See In re Chariff*, 221 A.D.2d 719, 720 (3d Dep't 1995) (finding no violation of D.R. 1-102(A)(4) "because of the general lack of venal motive underlying respondent's misconduct"); *In re Altomerianos*, 160 A.D.2d 96, 101 (1st Dep't 1990) ("That venal intent is a necessary element to DR 1-102(A)(4) we think is compelled by the definition of fraud given the 'Definitions' section of the Code of Professional Responsibility as 'not includ[ing] conduct ... which lacks an element of scienter, deceit, intent to mislead, or knowing failure to correct misrepresentations which can be reasonably expected to induce detrimental reliance by another.'"). If venal intent is required, mere negligence may be an insufficient basis for a D.R. 1-102(A)(4) charge. *See In re Mann*, 284 A.D.2d 719, 719-20 (3d Dep't 2001) (finding no violation of D.R. 1-102(A)(4), where conduct was "simply careless and irresponsible" and without venal intent); *In re Bartholomew*, 195 A.D.2d 753, 754 (3d Dep't 1993) (indicating that "conversions and bad checks ... attributable to inadvertence and shoddy bookkeeping" did not violate D.R. 1-102(A)(4)). We need not reach any conclusions on this possible conflict since we find Liu did not violate that rule under either formulation of the *mens rea* standard.

11

permit that practice, we conclude that Liu could not have been aware of any general obligation to disclose her participation to this Court.[5] We also conclude that there is no evidence suggesting that Liu knew, or should have known, that she was withholding material information from the Court or that she otherwise acted in bad faith. The petitions for review now at issue were fairly simple and unlikely to have caused any confusion or prejudice. Additionally, there is no indication that Liu sought, or was aware that she might obtain, any unfair advantage through her ghostwriting.[6] Finally, Liu's motive in preparing the petitions – to preserve the petitioners' right of review by satisfying the thirty-day jurisdictional deadline – demonstrated concern for her clients rather than a desire to mislead this Court or opposing parties. Under these circumstances, we conclude that Liu's ghostwriting did not constitute misconduct and therefore

---

[5] Rule 11 of the Federal Rules of Civil Procedure does not govern the situation, *cf. Duran*, 238 F.3d at 1271, since that rule applies only to district court proceedings, *see* Fed. R. Civ. P. 1, and requires the signature of the "attorney of record," Fed. R. Civ. P. 11(a), not a drafting attorney. *See also* Fed. R. Civ. P. 11(b)(specifying the representations that are made by an attorney when "presenting" a pleading to the court "whether by signing, filing, submitting, or later advocating it").

[6] Although Liu may have known, for example, that her ghostwritten pleadings might be accorded liberal construction, or that her ghostwriting might make it more difficult for the Court to police her behavior and for the parties and Court to determine whether an attorney or judge should be disqualified from participating in one of her cases, the ethics opinions permitting nondisclosure would have allowed a reasonable attorney to conclude that the ghostwriting now at issue was nonetheless immaterial.

12

does not warrant the imposition of discipline.[7]

**III.  The Committee's Prejudice Finding**

Although Liu denies that any of her clients were prejudiced by the dismissal of their cases on default, we adopt the Committee's findings concerning prejudice.  First, as noted by the Committee, Liu herself conceded that some of the dismissed cases had merit.  Report at 11-12; Hearing Tr. at 49, 51-52.  Second, at the very least, the dismissal of a case on default without the client's consent, even if the case appears to lack merit, causes prejudice by depriving the client of review by a panel of Article III judges.  Litigants who face deportation, incarceration, or simply a financial loss if they lose on appeal are likely to derive at least some satisfaction, consolation, or sense of finality from knowing that the loss on appeal resulted from the reasoned decision of three judges rather than from their attorneys' default.

**IV.  Conclusions**

Upon due consideration of the Committee's report, the underlying record, and Liu's submissions, it is hereby ORDERED that Liu is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report, except as discussed above, and DIRECTED to

---

[7]  However, in light of the importance of the ghostwriting issue, and the fact that the effect of ghostwriting on disqualification issues is not discussed in the ethics opinions described in the text, we recommend to the Court that it consider the amendment of its rules to resolve the matter.

comply with the reporting requirements described on page 13 of the Committee's report. Although we have found that Liu's ghostwriting did not constitute misconduct, we conclude that her other misconduct was sufficiently serious to warrant a public, rather than private, reprimand.

As stated in the Committee's report, if a report required by this order "is not timely filed or reveals deficiencies not justified by exigent circumstances, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony." Report at 13.

The text of this panel's February and July 2009 orders and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes.[8] Liu must disclose this order to all courts and bars of which she is currently a member, and as required by any bar or court rule or order. Liu also must, within fourteen days of the filing of this order, file an affidavit with this Court confirming that she has complied with the preceding disclosure requirement. Furthermore,

---

[8] The appended orders and Committee report have been corrected in minor respects and redacted to eliminate both details that are not now relevant and the names of attorneys who have not been found to have engaged in misconduct. The names of those attorneys have been replaced with "Attorney A" and Attorney B." The portions of those orders concerning Attorney A are relevant to the present decision since Liu has conceded responsibility for much of the questionable conduct attributed to Attorney A in the two orders.

14

the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other published decisions of this Court, and to serve a copy on Liu, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.[9]

## APPENDIX 1

### Text of February 2009 order

For the reasons that follow, Attorney A and Fengling Liu are referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether they should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

As a preliminary matter, we note that, in most of the cases discussed below where Attorney A's conduct is at issue, this Court's records indicate that Attorney A was employed by, or was acting on behalf of, the law offices of Fengling Liu. However, in several cases, it is difficult to ascertain the scope of Attorney A's responsibilities as opposed to the responsibilities of Fengling Liu and other attorneys in that law firm. We also do not

---

[9] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities. While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

15

know the exact nature of the employment relationship between Attorney A and Liu or Liu's obligation to supervise the work performed by Attorney A and other attorneys involved in the relevant cases. We leave these issues for consideration by the Committee in the first instance. Thus, although Attorney A and Liu are discussed in separate sections of this order, that division does not represent a final determination about each attorney's responsibility for the described events and conduct.

## Attorney A

Attorney A was brought to this panel's attention for several reasons. First, in three cases, panels of this Court have noticed briefing deficiencies by Attorney A or a person possibly acting under Attorney A's supervision. *See Lin Shui Bing v. Mukasey*, No. 05-4490-ag; *Ying Li v. Mukasey*, No. 08-0381-ag; *Jing Zhang v. Mukasey*, No. 04-5047-ag. In *Lin Shui Bing*, this Court dismissed, as unexhausted, a claim under the Convention Against Torture that Attorney A had raised for the first time before this Court. *See Lin Shui Bing,* No. 05-4490-ag, order filed May 17, 2007, at 4-5. Attorney A did not address the exhaustion issue or attempt to explain why the claim was raised despite the failure to exhaust. *See id.*, brief filed Nov. 29, 2006. In *Ying Li*, the relevant notice of appearance indicated that Attorney A represented the petitioner for the Fengling Liu law firm, although the appeal was from a Board of Immigration Appeals ("BIA") order dismissing the case based on the failure of the petitioner – represented before the BIA by Attorney A or another person in the Fengling Liu law firm -- to file a brief. *See Ying Li*, No. 08-0381-ag, notice of appearance filed Jan. 22, 2008; agency decision filed Jan. 22, 2008. However, the petitioner's brief in this Court, filed by an associate in the same firm as Attorney A, concerned the merits of the petitioner's asylum claim and not the actual basis for the BIA's dismissal. *Id.*, brief filed May 19, 2008. As a result, the Court dismissed the appeal, finding that the petitioner had failed to exhaust administrative remedies as to the merits of the asylum claim and had waived the issue of whether the BIA's summary dismissal was proper.[1] *Id.*, order filed Sept. 4, 2008.

---

[1] The *Ying Li* record illustrates the difficulty in several of the cases discussed in the text of distinguishing between Attorney A's responsibilities in the cases and the responsibilities of other attorneys in the Fengling Liu law firm. As noted in the text, in *Ying Li*, Attorney A filed the notice of appearance in this Court, but the brief was filed by a different person in the firm. In the agency proceedings, Attorney A signed the notice of appearance for the appeal to the Board of

In *Jing Zhang*, the record before both the BIA and this Court was incomplete, although Attorney A failed to mention that fact in her briefs submitted to the BIA and this Court. *See Jing Zhang*, No. 04-5047-ag, brief filed June 20, 2007. After an inquiry by this Court, the Government argued that the missing portions were not dispositive. *See id.*, Government letter filed Nov. 23, 2007. Attorney A, however, requested that the case be remanded to allow completion of the record, arguing that there were no exceptions to the agency's obligation to maintain a complete record and that the petitioner's due process rights might be violated in some unspecified manner by the lack of a complete record. *See id.*, Attorney A's letter filed Dec. 3, 2007. However, Attorney A did not explain why the missing documents were necessary for decision by the BIA and this Court, why she had not raised the issue before the BIA or this Court prior to this Court's inquiry, and why the issue was not barred for failure to exhaust administrative remedies. *Id.* In the order disposing of the appeal, the Court denied Attorney A's remand request, holding that the issue was unexhausted because Attorney A had failed to present it to the BIA and, moreover, the record was sufficient to dispose of the claims raised in the appeal. *See id.*, order filed Jan. 8, 2008, at 3.

Second, at least three of Attorney A's appeals in this Court have been dismissed based on Attorney A's failure to timely file a brief. *See* Second Circuit cases docketed under 06-4687-ag, 07-1724-ag, 07-2412-ag. Two of the defaults occurred after Attorney A's motions to withdraw as counsel had been denied and after she had failed to respond to this Court's orders to show cause why the petitions for review should not be dismissed for failure to comply with the scheduling orders. *See Weng Feng Qi v. Gonzales*, No. 07-1724-ag, orders filed Oct. 17, 2007 and Jan. 10, 2008; *Li Kwong Cheuk v. Gonzales*, No. 07-2412-ag, orders filed Sept. 5, 2007 and Oct. 25, 2007. In the third case, *Jing Zhu Chen v. Gonzales*, No. 06-4687-ag, in which the notice of appearance stated that Attorney A represented the petitioner, *id.*, notice filed Oct. 10, 2006, another attorney in Attorney A's firm filed a brief, but a joint

---

Immigration Appeals ("BIA"), although she entered "Fengling Liu / Attorney A" in the space for the attorney's name. *See* Admin. Record at 16-17 (filed in this Court on Mar. 17, 2008). Attorney A also appears to have signed the notice of appeal to the BIA, but only Fengling Liu's name is given as part of the attorney's mailing address. *Id.* at 12-14. Although Attorney A requested an extension of time to file the petitioner's BIA brief, *id.* at 5, the BIA order dismissing the appeal based on the failure to file a brief names only Fengling Liu as the appellant's attorney, *id.* at 1-2.

appendix was not filed, an omission the other attorney conceded in the subsequent motion for reinstatement of the appeal. *See id.*, motion filed Mar. 9, 2007; order granting reinstatement filed Mar. 22, 2007.

Third, out of Attorney A's 84 appeals in this Court, 13 were immigration appeals that were filed in the incorrect venue, requiring this Court to expend resources to transfer them to the appropriate circuits. *See* Second Circuit cases docketed under 05-6205-ag, 06-4564-ag, 06-4893-ag, 07-0739-ag, 07-0876-ag, 07-2742-ag, 07-2837-ag, 07-2885-ag, 07-3385-ag, 07-3562-ag, 07-3945-ag, 07-4055-ag, 08-0076-ag.

Finally, we note the filing of a number of pro se petitions for review in this Court, *see* Second Circuit cases docketed under 04-2518-ag, 04-6289-ag, 05-1960-ag, 05-3351-ag, 05-3722-ag, 05-4031-ag, 05-4490-ag, 05-4650-ag, 05-4651-ag, 05-4794-ag, 05-4982-ag, 05-5352-ag, 05-6204-ag, 06-1803-ag, that are identical in substance and formatting to petitions for review in cases filed by Attorney A, *see, e.g.*, Second Circuit cases docketed under 06-4402-ag, 06-4563-ag, 06-4564-ag, 06-4687-ag, 06-4893-ag. In a number of the cases filed pro se in this Court, Attorney A's firm had represented the petitioners at the agency level. The identical language and formatting suggest, among other possibilities, that the pro se petitioners had access to petitions prepared by Attorney A and used them as templates for their petitions, with or without Attorney A's help, or that Attorney A herself, or another attorney, drafted the petitions that were filed pro se without making her participation known to the Court.

## Fengling Liu

As suggested above, Liu may be responsible for some or all of the conduct described in the preceding paragraphs, either because she personally engaged in the conduct or failed to act despite a personal obligation to do so, or because she failed to properly supervise the conduct of Attorney A or others.

Additionally, the Court's records suggest that Liu also may bear responsibility for the following matters. First, a review of this Court's docket reveals that at least six cases filed by Fengling Liu since 2003 were dismissed based on her failure to abide by the briefing schedules. *See Meng Ren Wang v. Ashcroft*, No. 03-41032-ag (dismissed on default after motion to withdraw as counsel was denied); *Qin Huai Dong v. Ashcroft*, No. 03-4216-ag (later reinstated); *Li Zhi Shi v. Ashcroft*, No. 04-2517-ag (dismissed on default after motion to withdraw as counsel was denied); *Zhi Jian Chen v. Ashcroft*, No. 04-6291-ag (same); *Xiu Lan*

18

*Zheng v. Ashcroft*, No. 05-1196-ag; *Shui Xiang Wu v. Mukasey*, No. 05-4532-ag. Second, another appeal was dismissed based on Liu's failure to pay the filing fee, after her motion for *in forma pauperis* status was denied without prejudice to renewal if she provided an affidavit explaining, *inter alia*, how the petitioner was able to afford attorney's fees but not the filing fee. *See Xiang Xi Liu v. Ashcroft*, No. 05-0889-ag. Finally, this Court was the incorrect venue for at least 13 of Liu's appeals, requiring this Court to expend resources to transfer them to the appropriate circuits. *See* cases docketed under 03-40513-ag, 03-41033-ag, 04-0216-ag, 04-0292-ag, 04-1072-ag, 05-3724-ag, 05-5356-ag, 06-2209-ag, 06-2473-ag, 06-2811-ag, 06-3324-ag, 06-4193-ag, 08-2256-ag.

## Conclusion

Upon due consideration of the matters described above, it is hereby ORDERED that Fengling Liu and Attorney A are referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

[additional text omitted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: /s/
Michael Zachary
Supervisory Staff Attorney
Counsel to the Grievance Panel

## APPENDIX 2

## Text of July 2009 order

[W]e note that, although Attorney A states that she has not been involved in any cases before this Court since January 2008, there are at least two pending cases in which Attorney A is still listed as counsel of record. *See Yong Zhong Zheng v. Holder*, No. 07-5776-ag; *Yi Sui Wu v. Holder*, No. 07-5110-ag. Attorney A also is still listed as counsel of record in at least two cases that have been dismissed by stipulation without prejudice to reinstatement by certain specified dates. *See Run Chen v. Holder*, No. 07-2051-ag; *Yan Zheng v. Holder*, No. 07-5778-ag. Accordingly, it is hereby ORDERED that, within 60 days of the filing of this order:

(a) both Attorney A and Liu take all steps necessary to ensure that the correct attorney is listed as counsel of record in each of the above-noted cases; and

(b) Liu review all other pending cases before this Court in which any attorney in her office has appeared, and take all steps necessary to ensure that the correct attorney is listed as counsel of record.

Finally, we note that one of Liu's cases, *Jing Yue Liu v. Holder*, No. 07-3381-ag, was recently dismissed for failure to file a brief, after Liu failed to cure her defective motion to hold the case in abeyance. *See id.*, motion filed June 30, 2008, order filed Apr. 17, 2009. Although the docket sheet states that Liu was informed of the need to cure the defective motion, *see id.*, entries for July 1 and 3, 2008, and Jan. 13, 2009, Liu states in her recent motion for reinstatement that she had been told that the case would not be dismissed for default and that she had been waiting for a decision on her motion to hold the case in abeyance, *see id.*, motion filed June 12, 2009. We leave to the Committee, in the first instance, the determination of whether Liu should be subject to disciplinary measures for her conduct in that case.

[additional text omitted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: ____________/s/________________
Michael Zachary
Supervisory Staff Attorney
Counsel to the Grievance Panel

**REPORT & RECOMMENDATION**
**Re: In re Fengling Liu, No. 09-90006-am**

## I.   Introduction

By Orders dated February 2, 2009 and July 29, 2009, the United States Court of Appeals for the Second Circuit (the "Court") referred Fengling Liu to the Committee on Admissions and Grievances (the "Committee") for investigation and the preparation of a report regarding possible disciplinary or other corrective measures.  See Second Circuit Local Rule 46(h).

The February 2, 2009 Order raises a number of questions with respect to Ms. Liu: (1) failure to abide by briefing schedules in at least six cases; (2) failure to pay a filing fee; (3) preparing petitions of review for allegedly pro se petitioners without noting her involvement to the Court; and (4) knowingly filing numerous briefs in the incorrect venue.  The Order also notes that Ms. Liu "may be responsible for some or all of the conduct" of Attorney A, who was employed by the law offices of Ms. Liu and who purportedly filed briefs with various deficiencies.  The July 29, 2009 Order, which was issued after the Committee held a hearing in this matter, is discussed further below.

Attorney A herself is the subject of referral order 09-90005-am.

## II.  Procedural Background

Ms. Liu and Attorney A, both of whom appeared pro se, each submitted a written response to the February 2, 2009 Order, which the Committee has reviewed.  At the request of Ms. Liu and Attorney A, the Committee extended the original hearing date to June 8, 2009.

The hearing held on June 8, 2009 was conducted by Committee members the Hon. Howard Levine, David Fein and Paul Curnin.  The Committee heard the matters of Ms. Liu and

Attorney A jointly, with the consent of both respondents. Attorney A participated telephonically from Illinois for health reasons.

Subsequent to the June 8, 2009 hearing, the Court issued an additional referral order on July 29, 2009. Ms. Liu responded to that Order on September 17, 2009. After reviewing that response, the Committee determined that an additional hearing was not necessary.

The Committee will prepare a separate report and recommendation as to Attorney A.

## III. Factual Background

The following facts are taken from Court records, the respondents' submissions, and the testimony of June 8, 2009.

After Ms. Liu was admitted to the bar in the State of New York, she opened up her own law office, which primarily handles immigration cases. Ms. Liu still runs this law office and has not been otherwise employed since she was admitted to the New York bar. Ms. Liu is also a member of the bars of the Second, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Circuits. She is in good standing in each of those bars. According to her response affidavit, Ms. Liu has almost forty cases pending before the Second Circuit.

While Ms. Liu has never been disciplined by any bar or court, on September 25, 2008, the Seventh Circuit ordered her to show cause why she should not be disciplined for her conduct in *Yan Qin Xiao v. Mukasey*, No. 08-1120. In that case, Ms. Liu filed a motion to waive oral argument without explanation as to why the motion should be granted. When the motion was denied, she moved for reconsideration or to reschedule the oral argument, again without explanation. Then, two days before the scheduled argument, Ms. Liu requested leave to argue the appeal by speakerphone. When the motion was denied, a new attorney entered an appearance the day before the oral argument to present the case before the Seventh Circuit. In her response to the order to show cause, Ms. Liu explained that she did not know she had to provide an explanation for her motions in the Seventh Circuit and that she could not appear before the Seventh Circuit because of health problems, specifically "frozen shoulder disease." On October 20, 2008, the Seventh Circuit discharged the order to show cause "upon consideration" of Ms. Liu's response.

Ms. Liu testified that she had supervisory and overall responsibility for all of the matters on which Attorney A worked. She agreed that she had assigned specific tasks to Attorney A in piecemeal fashion and "didn't require her to follow through [on] the case[s]."[1] Ms. Liu, who was

---

[1] With respect to the quality of the briefing in two of the matters noted by the Court, *Lin Shui Bing v. Mukasey*, No. 05-4490-ag and *Jing Zhang v. Mukasey*, No. 04-5047-ag, Ms. Liu stated that Attorney A had primary responsibility to draft the briefs, although Ms. Liu supervised her. In both matters, the Court dismissed the appeal for failure to exhaust administrative remedies. Neither brief attempted to address the failure to exhaust issue. In her response affidavit, with respect to Lin *Shui Bing* and *Jing Zhang*, Ms. Liu indicated that "she failed to notice the problems as pointed out by the court and failed to correct them" because she only "gave Attorney A minimum supervision" on those two cases. However, on June 8,

(continued...)

2

present for Attorney A's opening statement and testimony, fully corroborated Attorney A's account. Attorney A testified that she followed Ms. Liu's directions carefully and without question because she trusted Ms. Liu and considered her a mentor.[2] Furthermore, Attorney A explained that Ms. Liu's law office was highly compartmentalized and that she had no overall case responsibility.

We found Ms. Liu (and Attorney A) credible.

## IV. <u>Legal Standard</u>

The Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit provide:

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office. . . . An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other unbecoming a member of the bar.

Committee Rule 4; *see also* Fed. R. App. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule."). "Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that show an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder*, 472 U.S. 634, 645 (1985).

Because Ms. Liu was a member of the bar of New York State during the time period at issue, the New York Rules of Professional Conduct (the "Rules") also apply. Two sections are of particular relevance in this matter. First, the Rules state that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." *See* Former N.Y. Code of Professional Responsibility Disciplinary Rule ("N.Y. Code of Prof. Resp. D.R.") 6-101, 22 N.Y.C.R.R. § 1200.30(A)(3)

---

[1](...continued)
2009, Ms. Liu testified that she had supervisory and advisory responsibility for *Lin Shui Bing* and *Jing Zhang*.

[2]For example, with respect to the appeals erroneously filed in the Second Circuit, when correct venue lay elsewhere, Attorney A stated: "I asked Ms. Liu the [correct] venue to file. And Ms. Liu told me Second Circuit is fine because she got confirmation from . . . the Second Circuit . . . . So I do this under Ms. Liu's direction."

3

(2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b)).[3] Second, the Rules prohibit conduct that "adversely reflects on the lawyer's fitness as a lawyer." *See* N.Y. Code of Prof. Resp. D.R. 1-102, 22 N.Y.C.R.R. § 1200.3(A)(7) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 8.4(h). Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g.*, *Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973).

Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. See ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from pro bono or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

## V. **The Alleged Misconduct**

### A. *Cases Filed in the Wrong Venue*

According to the referral order, Ms. Liu filed thirteen cases in the Second Circuit even though that was the wrong venue, requiring the Court to expend resources to transfer them to the appropriate circuits.[4] Ms. Liu admitted that she filed petitions for review in the Second Circuit

---

[3]At the time of Ms. Liu's at-issue conduct, the disciplinary rules of the former New York Code of Professional Responsibility governed attorney misconduct. As such, Ms. Liu's conduct was analyzed under these rules, and they are cited herein. On April 1, 2009, the Code of Professional Responsibility was replaced by the New York Rules of Professional Conduct, which are cited as parallel cites, referencing the rules currently in effect.

[4]The referral order also indicated that Attorney A filed thirteen cases in the Second Circuit even though that was the wrong venue. Attorney A testified that she followed Ms. Liu's instructions regarding where to file petitions. With respect to any of Attorney A's filings in an improper venue, Ms. Liu testified that only she was responsible for those errors and that Attorney A simply followed her

(continued...)

4

even though she knew the correct venue was another circuit. According to her response affidavit, Ms. Liu claimed that a Second Circuit clerk told her that it was permissible to file petitions in the wrong venue and therefore she "decided to file all cases with [the Second Circuit] even if the correct jurisdiction was another court." Ms. Liu indicated that she has followed this practice for many years because it was convenient for her to file petitions in the Second Circuit by hand-delivery. Ms. Liu noted that she never opposed the motions to transfer the cases out of the Second Circuit and explained that her decision to file petitions in the Second Circuit was based purely on convenience and was not a forum-shopping tactic. Ms. Liu asserted that she did not realize filing petitions in the Second Circuit was improper until she received the Court's referral order. Although Ms. Liu claimed that she never received any notice that this course of action was impermissible, she testified that she received motions from U.S. Attorney's Offices indicating that she was filing petitions in the wrong venue.

### B. Pro Se Petitions

The referral order notes fourteen pro se petitions for review filed in the Second Circuit that are identical in substance and formatting to petitions for review in cases filed by Attorney A. In several of those cases, Ms. Liu's firm had represented the petitioners before the Board of Immigration Appeals. In her response affidavit, Ms. Liu clarified that Attorney A was not involved in preparing the pro se petitions. Ms. Liu indicated that in a number of cases, her office helped prospective clients draft and file petitions for review.[5] Ms. Liu testified that she assisted individuals who could not afford her fee in filing petitions for review to the Second Circuit after the Board of Immigration Appeals denied their cases. Ms. Liu explained that these individuals were often out of town or did not have any money, but they still wished to preserve their right of appeal to the Second Circuit. Therefore, Ms. Liu helped prepare their papers, which did not note her law office's involvement, hoping that they might eventually raise money and retain her. She stated that she "could not see them miss the appeal deadline simply because of financial reasons." According to Ms. Liu, many of the petitioners ultimately raised enough money to pay her fees and retained her.

### C. Defaulted Cases

In four cases, the petitions for review were dismissed on default after Ms. Liu's motions to withdraw as counsel were denied. In those four matters, Ms. Liu's clients made it clear that they did not want to withdraw their petitions for review. After Ms. Liu filed motions to withdraw in those four cases, she stopped working on them and never filed any subsequent briefs. Ms. Liu admitted her wrongdoing in all four cases and clarified that Attorney A was not responsible for any of those defaulted cases.

---

[4](...continued)
instructions.

[5]Petitions for review in administrative cases are the equivalent of a notice of appeal in an appeal from a district court. Petitions for review are essentially one paragraph, largely non-substantive documents.

In *Li Zhi Shi v. Ashcroft*, No. 04-2517 and *Zhi Jian Chen v. Ashcroft*, No. 04-6291, two cases which Ms. Liu believed had merit, her services were discharged because her clients could not pay her. However, Ms. Liu's clients still wanted to continue their cases. Ms. Liu claimed that those two clients were not prejudiced because they knew she filed motions to withdraw as counsel and could not afford to hire new counsel. Ms. Liu did not explain to those clients that their motions to withdraw could be denied and she did not notify them that the motions were denied.

Both *Weng Feng Qi v. Gonzales*, No. 07-1724 and *Li Kwong Cheuk v. Gonzales*, No. 07-2412 were dismissed for failure to timely file a brief after the Court denied Attorney A's motions to withdraw as counsel.[6] Ms. Liu claims that she did not receive the denials of her motions to withdraw.[7] However, Ms. Liu failed to follow up with the Court regarding the status of the motions to withdraw. Ms. Liu admitted that her office stopped working on *Weng Feng Qi* and *Li Kwong Cheuk* as soon as the motions to withdraw were filed. Ms. Liu acknowledged that it was "[her] duty to follow up with the court about the motion and [she] failed that duty." Ms. Liu believed that her clients were not prejudiced even though they did not wish to withdraw their petitions. Ms. Liu did not inform her clients that if the motions to withdraw as counsel were denied, their cases would ultimately be dismissed if no further action was taken. Ms. Liu mistakenly believed that her representation of her clients ended when she filed motions to withdraw as their counsel. Ms. Liu also admitted that both *Weng Feng Qi* and *Li Kwong Cheuk* had merit.

In two other cases, *Xiu Lan Zheng v. Ashcroft*, No. 05-1196 and *Shui Xiang Wu v. Mukasey*, No. 0504532, Ms. Liu's clients clearly informed her that they wished to discharge her services, yet they did not want to withdraw their petitions. Ms. Liu admitted in her response affidavit that she failed to move to withdraw as counsel. Ms. Liu did not recall why she did not file motions to withdraw as counsel. Nevertheless, Ms. Liu did not believe her clients were prejudiced.

*Xiang Xi Liu v. Ashcroft*, No. 05-0889 is yet another case that was dismissed because Ms. Liu failed to file a motion to withdraw as counsel. That case was ultimately dismissed because Ms. Liu failed to pay a filing fee. According to Ms. Liu, her office advised the petitioner that he needed to pay the filing fee or submit an affidavit to explain why he could not afford the fee. Ms. Liu claimed that the petitioner "chose to do neither" despite being advised that his petition would be dismissed. Ms. Liu did not recall why she failed to file a motion to withdraw as counsel.

---

[6]Ms. Liu instructed Attorney A to withdraw her appearance and was responsible for the subsequent procedural defaults.

[7]While Ms. Liu claims she did not receive the denials of her motions to withdraw in *Weng Feng Qi* and *Li Kwong Cheuk*, she did not appear to make the same claim regarding *Li Zhi Shi* and *Zhi Jian Chen*. Ms. Liu did not explain, however, why she took no further steps after she received the denials of her motions to withdraw in the two latter cases.

Similarly, in *Meng Ren Wang v. Ashcroft*, No. 03-41032, the Court denied Ms. Liu's motion to withdraw as counsel and dismissed the case on default when Ms. Liu did not follow up in any way. According to Ms. Liu, she lost contact with her client and therefore "felt that [she] had no other choice but to file a motion to withdraw as counsel." When the Court denied her motion, she "still felt uncomfortable to continue to file the brief when [she] did not know the petitioner's intention and did not get his clear instruction." Therefore, she did not file a brief. As of the time she submitted her response affidavit, "the petitioner never visited [her] office or called [her] office." Ms. Liu assumed that the petitioner, who she believed had a strong case, abandoned his case and, as such, she "guess[ed]" he suffered no prejudice.

Ms. Liu also failed to file a timely brief in *Qin Huai Dong v. Ashcroft*, No. 03-4216, which was subsequently dismissed on default. According to Ms. Liu's testimony, she did not file a timely brief because she did not have the administrative record. She did not recall why she did not seek an extension. Ms. Liu indicated that the Court later granted her motion to reinstate the case and thus her client was not prejudiced.

### D.    *Ying Li v. Mukasey, No. 08-0381*

According to Ms. Liu, the petition for review in *Ying Li* was filed by Attorney A in January 2008, but Ms. Liu asked another associate, Attorney B, to prepare the brief in May 2008. The brief filed in the Second Circuit addressed the merits of the asylum claim, but not the Board of Immigration Appeal's basis for dismissal. Consequently, the Court dismissed the petition for failure to exhaust. Ms. Liu's response affidavit noted that Attorney B "was still new and inexperienced [at that time]. His inexperience caused him to miss the real issue of the case." Ms. Liu admitted that she "failed to give proper supervision to [Attorney B]." She claimed that she failed to properly supervise Attorney B because she was not well and traveled to China from May 6 to May 23, 2008 to visit her parents and "to have a rest."

### E.    *Jing Zhu Chen v. Gonzales, No. 06-4687*

In *Jing Zhu Chen*, Attorney A entered an appearance. Petitioner's brief was due January 8, 2007. Another attorney filed a brief on that day, but failed to file a joint appendix. As a result, the petition was dismissed on March 7, 2007. On March 9, 2007, the petitioner filed the joint appendix along with a motion to reinstate the petition, which was granted. According to Ms. Liu, Attorney A filed the petition for review and entered her appearance, but her involvement ended there. Ms. Liu acknowledged that she failed to file the joint appendix with the brief. She claimed that she had not obtained the administrative record by January 4, 2008. Therefore, she moved for an extension, which she expected would be granted. She was "caught by surprise[]" when it was denied and focused on completing the brief in the three days remaining before the deadline. Ms. Liu indicated that she did not have time to also prepare the joint appendix. Ms. Liu noted that she filed a motion to reinstate, which the Court granted, and therefore did not believe her client was prejudiced.

## F. The July 29, 2009 Order

In the July 29, 2009 Order, the Court noted that while Attorney A has explained that she has not been involved in any cases before the Court since January 2008, there are at least two pending cases in which Attorney A is still listed as counsel of record. *See Yong Zhong Zheng v. Holder*, No. 07-5776-ag; *Yi Sui Wu v. Holder*, No. 07-5110-ag. Attorney A is also listed as counsel of record in at least two cases that have been dismissed by stipulation without prejudice to reinstatement by certain specified dates. *See Run Chen v. Holder*, No. 07-2051-ag; *Yan Zheng v. Holder*, No. 07-5778-ag. The Court ordered Attorney A and Ms. Liu to take all steps necessary to ensure that the correct attorney of record is listed in these cases. The Court also ordered Ms. Liu to review all other pending cases in which an attorney in her office has appeared and to take all steps necessary to ensure that the correct attorney is listed as counsel of record.

In her September 17, 2009 response, Ms. Liu explained that she has complied with the July 29, 2009 Order in full. She has corrected the attorney of record in the four cases included in the Order and has reviewed all pending cases before the Court (and other Federal Courts of Appeals) to ensure that the correct attorney is listed as the attorney of record. The Committee has confirmed with the Court that Ms. Liu corrected the docket in the four cases noted in the July 29, 2009 Order.

The July 29, 2009 Order also notes that *Jing Yue Liu v. Holder*, No. 07-3381-ag, was recently dismissed for failure to file a brief, after Ms. Liu failed to cure her defective motion to hold the case in abeyance. The docket sheet indicates that Ms. Liu was informed of the need to cure the defective motion. Ms. Liu, however, stated in a motion for reinstatement that she had been told the case would not be dismissed for default and that she had been waiting for a decision on the motion to hold the case in abeyance.

In her September 17, 2009 response, Ms. Liu explained that a Form I-485 application to adjust the immigration status of the petitioner in *Jing Yue Liu v. Holder*, No. 07-3381-ag, based on her marriage to a United States citizen. If that application is granted, the petitioner will no longer need to apply for asylum. Thus, Ms. Liu's office moved to hold the appeal in abeyance. She claims that before the brief in support of the petition for review was due, her office contacted the clerk's office and was told that as long as the motion to hold the case in abeyance was pending, the briefing schedule would be suspended. Ms. Liu's office was subsequently told that additional documents in support of the motion were required and Ms. Liu complied on October 3, 2008. Ms. Liu included with her September 17, 2009 response her October 3, 2008 submission to the Court in support of the motion to hold the case in abeyance. The copy she submitted is stamped received by the Court on October 3, 2008. The submission, however, is not included on the Court's docket for the case. Ms. Liu claims no one in her office has any recollection of receiving additional notice of any defects in the motion. Ms. Liu claims that she did not submit a brief in support of the petition for review because she believed, based on advice from the clerk's office, the briefing schedule would not go into effect while the motion to hold the case in abeyance was pending. Ms. Liu believes she "is entitled to the reasonable expectation" that she "would be given the opportunity to file the brief if the motion [was] denied."

Ms. Liu moved to reinstate the appeal on August 3, 2009.  The Court denied the motion on September 9, 2009, indicating that the petitioner "has still failed to comply with the request to explain why a Hold is warranted" and that "there is no manifest injustice."

Since the series of events leading up to the dismissal of Jing Yue Liu v. Holder appear to be nothing more than a miscommunication, in our view Liu's conduct does not warrant additional sanctions at this time.  In the future, however, Ms. Liu should take care to be more proactive in following up with the Court if she has a question about a pending motion.

## VI. <u>Disciplinary Action is Warranted</u>

### A.    *Duties Violated*

The evidence demonstrates that in each of the cases that were dismissed on default, Ms. Liu neglected her duties and failed to prosecute her clients' cases diligently.  In several cases, Ms. Liu erroneously viewed the mere act of *filing* motions to withdraw as counsel as discharging any and all of her responsibilities as her clients' attorney.  When Ms. Liu knew that the motions to withdraw as counsel were denied, she took not a single step to continue to represent her clients.  Assuming that Ms. Liu did not receive notice that certain motions to withdraw as counsel had been denied, she still did not follow up with the Court to confirm that the motions to withdraw were granted.  Ms. Liu did not provide any justification for her gross negligence. After filing motions to withdraw as counsel, it does not appear that Ms. Liu contacted her clients to update them about the status of their cases.  Ms. Liu did not explain to her clients that the motions to withdraw could be denied, and it seems that Ms. Liu did not accept the very real possibility that motions to withdraw can be denied.  Furthermore, Ms. Liu did not inform her clients that if the motions to withdraw as counsel were denied, their cases would ultimately be dismissed if no further action was taken.

In several other instances, Ms. Liu simply failed to file a motion to withdraw as counsel, even though her clients clearly notified her that they wished to discharge her services (yet keep their cases open).  While Ms. Liu did not recall why she failed to file motions to withdraw or follow up with the Court, she claimed that her clients were not prejudiced.  Generally, it appears that Ms. Liu considered her representation to end once she determined that the best course of action was for her to withdraw as counsel.

By ceasing to represent her clients even though the Court did not grant her motions to withdraw as counsel, Ms. Liu violated her obligation either to represent her clients or terminate the representation.  A lawyer may not withdraw from employment "until the lawyer has taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, delivering to the client all papers and properties to which the client is entitled and complying with applicable laws and rules." *See* N.Y. Code of Prof. Resp. D.R.  2-110, 22 N.Y.C.R.R. § 1200.15(A)(2) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.16(e).  Additionally, Ms. Liu

9

was negligent for not filing motions to withdraw as counsel in various cases.[8] Her failure to do so unnecessarily burdened the Court. If Ms. Liu was unable to locate her client, as she alleged with respect to *Meng Ren Wang*, the proper course of conduct was to withdraw and alert the Court so that the case could be properly dismissed and any scheduled oral argument could be canceled. *See* N.Y. Code of Prof. Resp. D.R. 2-110, 22 N.Y.C.R.R. § 1200.15(A)(2) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.16(e) ("A lawyer shall not withdraw from employment [without] complying with applicable laws and rules."); *Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008).

With respect to *Ying Li v. Mukasey*, Ms. Liu bore ultimately responsibility for her office's failure to exhaust administrative remedies.[9] *See* N.Y. Code of Prof. Resp. D.R. 1-104, 22 N.Y.C.R.R. § 1200.5(B) (2008) ("A lawyer with management responsibility in the law firm or direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the disciplinary rules."); N.Y. Code of Prof. Resp. D.R. 1-104, 22 N.Y.C.R.R. § 1200.5(C) (2008) ("A law firm shall adequately supervise, as appropriate, the work of partners, associates and nonlawyers who work at the firm."); *see also* N.Y. Rules of Prof'l Conduct R. 5.1 ("A lawyer with management responsibility in a law firm shall make reasonable efforts to ensure that other lawyers in the law firm conform to [the New York Rules of Professional Conduct]. . . . A lawyer with direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the supervised lawyer conforms to these Rules.").

Ms. Liu was negligent for filing petitions for review in the Second Circuit even though she knew the correct venue was another circuit. According to Ms. Liu, she filed petitions in an improper venue because it was more convenient for her to do so. Although Ms. Liu received numerous motions from U.S. Attorney's Offices indicating that she was filing petitions in the wrong venue, she claimed that she did not know that practice was improper. By filing petitions in an improper venue, Ms. Liu acted negligently and without reasonable diligence, and caused the Court to expend resources in transferring cases to the correct venue. *See* N.Y. Code of Prof. Resp. D.R. 6-101, 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); N.Y. Code of Prof. Resp. D.R. 7-106, 22 N.Y.C.R.R. § 1200.37(C)(7) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client. A lawyer shall not neglect a legal matter entrusted to the lawyer."); N.Y. Rules of Prof'l Conduct R. 3.3

---

[8]By failing to file motions to withdraw and by effectively ceasing to represent her clients before the Court granted motions to withdraw, Ms. Liu also violated her duty to act diligently. *See* N.Y. Code of Prof. Resp. D.R. 60-101, 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client. A lawyer shall not neglect a legal matter entrusted to the lawyer. A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services, but the lawyer may withdraw as permitted under these Rules.")

[9]Similarly, Ms. Liu was ultimately responsible for her office's failure to exhaust administrative remedies in *Lin Shui Bing v. Mukasey* and *Jing Zhang v. Mukasey*. Even though Ms. Liu averred that Attorney A was primarily responsible for drafting the briefs associated with *Lin Shui Bing* and *Jing Zhang*, Ms. Liu testified that she had supervisory and advisory responsibility for those cases.

("In appearing as a lawyer before a tribunal, a lawyer shall not intentionally or habitually violate any established rule of procedure or of evidence."). Ms. Liu should have taken steps to confirm whether it was appropriate to file petitions in the wrong venue. One conversation with a law clerk does not constitute "reasonable diligence." *See* N.Y. Code of Prof. Resp. D.R. 6-101, 22 N.Y.C.R.R. § 1200.30(A)(3) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 1.3. Furthermore, the U.S. Attorney's Offices' continued reminders that Ms. Liu was filing petitions in the wrong venue should have set off some warning signs that Ms. Liu was violating procedural rules.

Ms. Liu also violated her duty of candor by helping petitioners draft and file petitions for review, but failing to disclose her involvement to the Court. *See* N.Y. Code of Prof. Resp. D.R. 1-102, 22 N.Y.C.R.R. § 1200.3(4) (2008); *see also* N.Y. Rules of Prof'l Conduct R. 8.4 ("A lawyer or law firm shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.").[10] It is important to note, however, that the petitions for review that Ms. Liu helped certain petitioners prepare are the equivalent of a notice of appeal in an appeal from a district court. Therefore, this assistance was not substantial and arguably did not harm the petitioners.

### B. Ms. Liu's State of Mind

In considering Ms. Liu's state of mind, see ABA Standards § 3.0(b), the Committee found no evidence that her conduct was intentionally violative in any way. Ms. Liu's misconduct appears to be due to a combination of negligence and misunderstanding of procedural rules. The Committee found no evidence that Ms. Liu intentionally or knowingly intended to ignore the Court's orders or violate Court rules. Moreover, the Committee found no evidence that Ms. Liu's defaults were the result of any deliberate or reckless decision to increase the volume of her practice at the expense of her ability to represent her clients effectively.

### C. The Actual or Potential Injury

With respect to *Li Zhi Shi*, *Zhi Jian Chen*, *Weng Feng Qi*, and *Li Kwong Cheuk*, Ms. Liu failed to follow up with the Court regarding her motions to withdraw as counsel. Ms. Liu's claim that her clients were not prejudiced-even though she recognizes that they did not wish to withdraw their petitions-does not hold water, because her clients did not realize that their cases would ultimately be dismissed if the motions to withdraw were denied and no further action was taken. Moreover, Ms. Liu's admission that all four of those cases had merit further undermines her claim that her clients were not prejudiced. Similarly, Ms. Liu's failure to file motions to withdraw as counsel-a course of action Ms. Liu concedes was appropriate in *Xiu Lan Zheng*, *Shui Xiang Wu*, and *Xiang Xi Liu*-may very well have prejudiced her clients, despite her bare-boned contention that her clients were not harmed. Likewise, it is possible that Meng Ran Wang was prejudiced when the Court denied Ms. Liu's motion to withdraw as counsel and she

---

[10]*See also,* "Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice," 67 Fordham L. Rev. 2687, 2701 (1999) (citing Committee on Prof'l and Judicial Ethics, Association of the Bar of the City of New York, Formal Op. 1987-2 (1987) ("caution[ing] that undisclosed special pro se treatment" and recommending that attorney-drafted pleadings, at the very least, include the words "Prepared by Counsel.")).

did not follow up in any way.  Regarding *Ying Li*, Ms. Liu's failure to properly supervise an inexperienced junior associate likely prejudiced her client, whose petition was ultimately dismissed for failure to exhaust.

Despite Ms. Liu's admitted deficiencies with respect to Qin Huai Dong and Jing Zhu Chen, it does not appear to the Committee that her clients were prejudiced because the Court ultimately granted her motions to reinstate those cases.  Additionally, with respect to cases Ms. Liu filed in the improper venue or the pro se petitions for review she helped prepare, it does not appear to the Committee that her clients were prejudiced.

### D.  *Aggravating and Mitigating Factors*

Both aggravating and mitigating factors are present.  The aggravating factors considered by the Committee include: (1) Ms. Liu's pattern of negligence, involving multiple instances of misconduct; and (2) the vulnerability of Ms. Liu's immigration clients.  ABA Standards § 9.22 (c), (d), and (h).

The mitigating factors present include: (1) Ms. Liu's absence of a prior disciplinary record; (2) the absence of a selfish motive; (3) Ms. Liu's cooperative attitude toward these proceedings; and (4) remorse.  ABA Standards § 9.32 (a), (b), (e), and (l).  Ms. Liu not only accepted fault for the overwhelming majority of incidents raised before this Committee, but she also explained that she-and not Attorney A-was generally to blame for any misconduct.

## VII.    Recommendation

Upon clear and convincing evidence, the Committee finds that disciplinary action is warranted in this case based on "conduct unbecoming a member of the bar." Fed. R. App. P. 46(c).  Under the circumstances, the Committee recommends that Ms. Liu be publicly reprimanded.  A single instance of conduct inimical to the administration of justice or neglect of a matter entrusted to an attorney might not justify any sanction, but here there are a number of instances of misconduct and neglect.  In addition, conduct and neglect arising from a high volume practice is serious because of the likelihood that repetitive neglect will result to the detriment of present and future clients.  Where a lawyer engages in practice at a sufficiently high volume, neglect due to overwork and inadequate coverage is a risk knowingly assumed.  And here, Ms. Liu's actions likely prejudiced several of her clients.

Some instances of Ms. Liu's misconduct, including her failure to file motions to withdraw where appropriate, tend towards gross negligence.  Ms. Liu did not clearly explain the consequences of potential Court actions to her clients and ceased representing them even though the Court had not actually terminated her representation.  Moreover, Ms. Liu often acted carelessly, pursuing courses of action based upon convenience rather than reasonable diligence.  Ms. Liu often acted based upon her expectations of how the Court might rule and disregarded the Court's actual rulings.

Accordingly, Ms. Liu should be publicly reprimanded for her failures as set forth herein.  (A draft form of reprimand is attached).  In addition, she should be required, in connection with her practices in any federal court in the Second Circuit or in any federal administrative agency

whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. It is expected that these reports will show no such instances absent exigent circumstances, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstances, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Ms. Liu and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting periods shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.